358 So.2d 547 (1978)
Neil D. MacMILLAN, Appellant,
v.
STATE of Florida, County of Dade, Appellees.
No. 52084.
Supreme Court of Florida.
April 27, 1978.
Lawrence G. Ropes, Jr., Coral Gables, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, Janet Reno, State's Atty., and George Volsky, Asst. State's Atty., Miami, for appellees.
William L. Richey of Steel, Hector & Davis, Miami, for Florida Power and Light Co.
W. Robert Fokes, Tallahassee, for Florida Cable Television Association, Inc.
William P. Burns, Miami, for Miami-Dade Water and Sewer Authority.
James W. Vance and Peter R. Tanzy, West Palm Beach, for Lake Worth Utilities Authority.
Michael E. Watkins, City Atty. of Turner, Hodson, Watkins & Lynn, Homestead, for City of Homestead, Dade County, amici curiae.
PER CURIAM.
This cause is before us on direct appeal to review the judgment of the County Court, in and for Dade County, upholding the constitutionality of Section 812.14(3), Florida Statutes (Supp. 1976).
Appellant was charged by an information dated December 27, 1976, with trespass and larceny with relation to utility fixtures in violation of Section 812.14, Florida Statutes (Supp. 1976). More specifically, the information charged that the appellant had, through the use of some device, used electricity owned by Florida Power and Light without first letting it pass through a meter provided by Florida Power and Light and used for measuring and registering the quantity of electricity passing through same. On January 25, 1977, the appellant was arraigned and pled not guilty to the charge. Appellant waived his right to jury trial and, after the close of the state's case, moved for a directed verdict, arguing, inter alia, that the statute was unconstitutional as it applied to homeowners. The motion was denied, and the appellant was convicted and sentenced to thirty days. His motion for a stay pending appeal was granted.
A motion for new trial was filed by the appellant. The motion alleged that Section 812.14, Florida Statutes (Supp. 1976), was unconstitutional in that it placed
"an untenable burden upon [appellant]-property-owner by requiring him to be the custodian, caretaker, insuror, and protector *548 of the personal property of the `Utility' (such as a meter or meters) attached to the real property in the actual possession of the [appellant] and setting forth therein that the said [appellant] is thereby prima-facie [sic] guilty of an intent to violate said statute if there is found to be existing connection, wire, conductor, meter alteration, or any device which effects the diversion of service of the `Utility.'"
The motion further alleged that the statute violated the Fifth Amendment privilege against self-incrimination. The trial judge denied the appellant's motion but stated no reasons for the denial in his order. An appeal was taken by the appellant to the Circuit Court for Dade County. The appellant assigned as error, inter alia, the trial court's determination that Section 812.14, Florida Statutes (Supp. 1976), was constitutional. The Circuit Court, holding that the trial judge directly passed upon the constitutionality of Section 812.14, Florida Statutes (Supp. 1976), ordered that the cause be transferred to this Court.
The primary question presented for our consideration is the constitutionality vel non of Section 812.14(3), Florida Statutes (Supp. 1976), which establishes a presumption of intent to violate and of the violation of Section 812.14, Florida Statutes (Supp. 1976). The challenged statutory presumption provides:
"(3) The existence, on property in the actual possession of the accused, of any connection, wire, conductor, meter alteration, or any device whatsoever, which effects the diversion or use of the service of a utility or a cable television service or community antenna line service or the use of electricity, gas, or water without the same being reported for payment as to service or measured or registered by or on a meter installed or provided by the utility shall be prima facie evidence of intent to violate, and of the violation of, this section by such accused. The use or receipt of the direct benefits from the use of electricity, gas, water, heat, oil, sewer service, telephone service, telegraph service, radio service, communication service, television service, or television community antenna line service derived from any tampering, altering, or injury of any connection, wire, conductor, device, altered meter, pipe, conduit, line, cable, transformer, amplifier, or other apparatus or device shall be prima facie evidence of intent to violate, and of the violation of, this section by the person or persons so using or receiving such direct benefits."
Appellant argues that this statutory presumption is unconstitutionally irrational and arbitrary in that it fails to meet the rational connection test. Appellee argues that the challenged section meets the tests of due process established by this Court and the Supreme Court of the United States.
The Supreme Court of the United States, in Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1549 (1943), established the "rational connection" test as the primary method of determining the constitutional validity of statutory presumptions. Tot v. United States, supra, involved a federal statute which made it a crime for one previously convicted of a crime of violence or a fugitive from justice to receive any firearm in an interstate transaction and which further provided that possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm was shipped, transported or received, as the case may be, by such person in violation of this act. Utilizing the "rational connection" test, the Supreme Court of the United States held that the presumption created by this law was violent and inconsistent with any argument drawn from experience and explained the due process limitations placed on authority of Congress to prescribe what evidence is to be received in the courts as follows:
"The rules of evidence, however, are established not alone by the courts but by the legislature. The Congress has power to prescribe what evidence is to be received in the courts of the United States. The section under consideration is such legislation. But the due process clauses of the Fifth and Fourteenth Amendments *549 set limits upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated. The question is whether, in this instance, the Act transgresses those limits.
.....
"Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts." Tot v. United States, supra, at 467, 468, 63 S.Ct. at 1245.
Cf. United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); Fitzgerald v. State, 339 So.2d 209 (Fla. 1976).
More recently, in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), the Supreme Court held invalid a federal act which provided that a defendant's possession of marijuana shall be deemed sufficient evidence that the marijuana was illegally imported or brought into the United States and that the defendant knew of the illegal importation unless the defendant explains his possession to the satisfaction of the jury. Therein, the Supreme Court emphasized
"that a criminal statutory presumption must be regarded as `irrational' or `arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. And in the judicial assessment the congressional determination favoring the particular presumption must, of course, weigh heavily." (Emphasis supplied.) Supra at 36, 89 S.Ct. at 1548.
Subsequently, in Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), the Supreme Court confronted the question of whether a presumption which meets the "more likely than not" test must also satisfy the "beyond a reasonable doubt" standard and concluded:
"The teaching of the foregoing cases is not altogether clear. To the extent that the `rational connection,' `more likely than not,' and `reasonable doubt' standards bear ambiguous relationships to one another, the ambiguity is traceable in large part to variations in language and focus rather than to differences of substance. What has been established by the cases, however, is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process." Barnes v. United States, supra, at 843, 93 S.Ct. at 2361.
Sub judice, we need not consider whether the subject statutorily created presumption meets the reasonable doubt standard since we agree with appellant that it does not satisfy the rational connection standard. Under the challenged statute, the presumed fact of intent to violate and of violation comes into play merely upon proof that the property wherein diversion of some sort has occurred is in the actual possession of the accused or upon proof that the accused has received direct benefit from a utility. We find that it cannot be said with substantial assurance that the presumed fact that defendant is guilty of violation of Section 812.14, Florida Statutes (Supp. 1976), is more likely than not to flow from the proved fact of possession of the premises or receipt of benefits. One in actual possession *550 of property or one receiving direct benefits would not more likely than not be the guilty person. Such an inference is irrational and arbitrary. Common experience tells us that the device or apparatus tampered with or altered is generally on the outside of a building and accessible to anyone; that the direct benefits from the use of electricity, gas, water, heat, oil, sewer service, telephone service, telegraph service, radio service, communication service, television service, or television community antenna line service are commonly derived by any occupant of the premises, including family members, business partners, associates, employees and others; and that the billing which would constitute notice of possible alteration is done no more frequently than monthly. Furthermore, there are many ways to make an alteration which are so simple in nature that a prankster, a vandal or an angry neighbor could utilize them to cause the one in possession of the premises to receive benefits therefrom without his knowledge and, thereby, subject him to the presumption.
Since we find subsection 3 to be unconstitutional, we must proceed to determine its severability from Section 812.14, Florida Statutes (Supp. 1976).
Relative to the question of severability of an invalid subsection from a statutory section, this Court, in High Ridge Management Corp. v. State, 354 So.2d 377 (Fla. 1977), stated:
"The mere fact that the act does not contain a severability clause does not mandate a determination that the entire statutory provision should be condemned. State ex rel. Limpus v. Newell, 85 So.2d 124 (Fla. 1956). If an unconstitutional portion of an act can be logically excised from the remaining valid provisions without doing violence to the legislative purpose expressed in the valid portions, if such legislative purpose can be accomplished independently of the invalid provisions, if the act is complete in itself after striking the invalid provisions and if the valid and invalid provisions are not so inseparable that the Legislature would not have enacted the one without the other, it is the duty of the Court to give effect to that portion of the statute which is not constitutionally infirm... ." Supra at 380.
The deletion of subsection 3 from Section 812.14, Florida Statutes (Supp. 1976), does not disturb the valid portions of this statutory provision and leaves intact a workable statute and is, therefore, severable.
We have carefully reviewed the remaining issues in light of oral argument, the briefs and the record and find them to be without merit.
Accordingly, the judgment of the trial court is reversed, and this cause is remanded for a new trial.
OVERTON, C.J., and ADKINS, BOYD and HATCHETT, JJ., concur.
ENGLAND, J., dissents.