398 So.2d 804 (1981)
STATE of Florida, Appellant,
v.
Franco FERRARI and Charles Tarantino, Appellees.
No. 58603.
Supreme Court of Florida.
April 2, 1981.
Rehearing Denied June 19, 1981.
*805 Jim Smith, Atty. Gen., and Phillip D. Havens, Asst. Atty. Gen., Daytona Beach, for appellant.
Robert J. Buonauro, Orlando, and James Weart, Sanford, for Franco Ferrari and Charles Tarantino, appellees.
ADKINS, Justice.
This case comes to the Court on direct appeal from the Circuit Court of the Ninth Judicial Circuit in and for Orange County. We have jurisdiction since the court below held section 713.34(3), Florida Statutes (1979), unconstitutional. Art. V, § 3(b)(1), Fla. Const.
On March 29, 1978, F & C Builders, a partnership formed by appellees, contracted with Dr. R.W. Geldner to make improvements to his residence at a cost of $38,280. An advance payment of $14,000 was made when the contract was signed. Thereafter appellee Tarantino was arrested on a fugitive warrant issued by the State of Tennessee charging misapplication of contract funds. Tarantino at that point requested that appellee Ferrari agree to advance him $10,000 from F & C Builders to settle the Tennessee claims and avoid prosecution in that state. Ferrari agreed.
*806 Appellees received a second draw on Dr. Geldner's construction contract on May 15, 1978. The next day Geldner's check for $11,982 was deposited in F & C's bank account, bringing the balance of that account to $12,446.92. On the same day, $10,000 was withdrawn from the F & C account for disbursement in settlement of the Tennessee claims.
F & C Builders was incorporated on July 6, 1978. Subsequently Ferrari attempted to withdraw from the corporation and took a truck, a trailer, and a riding lawn mower in consideration of his capital investment. Appellees never completed the work on Geldner's home, and materialmen and subcontractors went unpaid.
On July 21, 1979, appellees were charged by information with second-degree grand theft in violation of sections 812.014 and 713.34(3), Florida Statutes (1979). Appellees moved to dismiss, alleging that section 713.34(3) was unconstitutionally void for vagueness and that the presumption of prima facie evidence of intent to defraud, which the statute permits to be drawn from misdirection of contract advances, violated appellees' Sixth Amendment rights to a fair and impartial trial.
The trial court granted the motion to dismiss, holding that section 713.34(3) was impermissibly vague, overbroad and indefinite, and violative of the due process and equal protection clauses of the United States and Florida Constitutions. It was further held that the presumption of prima facie evidence of intent to defraud was irrational and arbitrary and therefore unconstitutional. This appeal followed.
The issue to be decided is whether the court below erred in holding section 713.34(3) unconstitutional. Section 713.34(3), Florida Statutes (1979), provides:
Any person, firm, corporation or agent, officer or employee thereof who, with intent to defraud, shall use the proceeds of any payment made to him on account of improving certain real property, for any other purpose than to pay for labor or services performed on or materials furnished for this specific improvement, while any amount for which he may be or become liable for such labor, services, or materials remains unpaid shall be guilty of embezzlement and shall be prosecuted and, upon conviction, punished in accordance with the provisions of the laws of this state; provided, however, that failure to pay for such labor, services or materials furnished for this specific improvement after receipt of such proceeds shall constitute prima facie evidence of intent to defraud.
The aim of the statute is to attach criminal liability for embezzlement to the actions of a contractor who misappropriates construction funds. There are three elements of the offense of embezzlement as described by section 713.34(3). First, there must be a misdirection of funds which have been entrusted to the holder for the purpose of improving real property. Second, the misdirection of funds must take place while a bill for labor, materials or services incurred in improving the property is due (or may become due) but remains unpaid. Third, the misdirection of funds must be undertaken with the intent to defraud. There is a statutory presumption of prima facie evidence of intent to defraud if bills from suppliers or subcontractors are not paid.
First we must address the trial court's holding that the presumption employed by the statute is invalid. It is well settled that only permissive presumptions may be utilized in criminal cases. That is, presumptions "which [allow] the jury to find the presumed fact once the basic fact is proven but [do] not require such a finding by the jury." Fitzgerald v. State, 339 So.2d 209, 211 (Fla. 1976) (emphasis added). The plain language of section 713.34(3) indicates that its presumption does not bind the jury to find that the presumed fact necessarily follows the proven fact, therefore the presumption is permissive in nature. In fact, the presumption in the instant case is strikingly similar to the presumption of prima facie evidence of intent under section 814.06, Florida Statutes (1973), which we upheld in Fitzgerald.
This Court has recognized two other constitutional restrictions upon presumptions:

*807 Criminal acts declaring one fact prima facie evidence or presumption of another are frequent. Their purpose is not to relieve the State of the burden of proof, but to allow the establishment of a prima facie case. Constitutional guarantees are not violated as long as there is a rational connection between the fact proven and the ultimate fact presumed and reasonable opportunity is afforded to rebut the presumption.
State v. Kahler, 232 So.2d 166, 168 (Fla. 1970) (citations omitted).
The presumption in section 713.34(3) clearly affords a reasonable opportunity for rebuttal. Since the presumption is one of prima facie evidence only, the state is not totally relieved of the burden of proof. Any time after this prima facie evidence of intent is established the defendant may come forward with evidence to negate criminal intent, thereby destroying the presumption and shifting the burden back to the state to prove intent beyond a reasonable doubt. See, e.g., Mann v. State, 209 So.2d 472 (Fla. 1st DCA 1968).
There is a rational relationship between the proven fact that material and labor costs remain unpaid after an advance of contract funds, and the presumed fact that the contractor intends to defraud. Those contractors who intend to defraud their clients must to some degree incur material and labor debts in order to keep up a minimal level of activity on the job and extract subsequent contract draws. Clearly, such an embezzlement scheme would be fruitless if the contractor in fact paid all costs incurred on the job out of the funds received. Considering these factors, the legislature could have determined that the failure to pay suppliers and materialmen constitutes sufficient indication of intent to defraud that it should be prima facie evidence of such intent. It follows that the requisite relationship between the proven and presumed facts exists here. Accordingly, we conclude that the presumption of section 713.34(3) passes constitutional muster.
The trial court also found section 713.34(3) to be vague and overbroad. These are two substantially different defects.
A vague statute is one which is constitutionally infirm because its language is so unclear or ambiguous that persons of reasonable intelligence must guess at what conduct is proscribed. Our reading of section 713.34(3) reveals no unclear language. The appellees assert that problems exist with regard to determining when a material bill is owing. They direct our attention to language in the Mann decision, supra, stating that the statute is vague and indefinite in that respect.
We will not determine the constitutionality of the Statute in question because it was not properly raised in the lower court, but we can, and we think properly so, say and determine that said statute is so vague and indefinite as to times, such as "when is a material bill owing," that it becomes completely impractical, if not impossible for a building contractor to contract for work on more than one house at a time and pay for anything without being in violation of said act.
209 So.2d at 474. (The statute considered by the Mann court was section 84.341(3), which has been superseded by a practically identical section 713.34(3).) By the court's admission this reasoning was not necessary to the decision and therefore was dicta. We believe a deeper inquiry into the constitutionality of the statute would have lead to a different conclusion. Granted, the statute does not precisely define when a bill becomes due and owing, but no such definition is necessary. The statute is to be read in pari materia with Florida's version of the Uniform Commercial Code, more precisely chapter 672, Florida Statutes, concerning Sales, and Florida contract law. Such a reading allows consideration of variable factors such as prior dealings between the contractor and the creditor and usage of trade, simultaneously solving any vagueness problems.
A statute is overbroad if it is so all-encompassing in its reach that it ensnares both protected and non-protected conduct. *808 Appellees argue that section 713.34(3) is overbroad since it is impossible for an honest contractor to operate without violating the statute because the cash flow realities of the construction business frequently mandate that a contractor engaged in numerous projects use funds advanced for one job to pay subcontractors or suppliers on another. They assert that it is common practice for a contractor to use incoming funds to discharge his most pressing obligations and replace them later with the proceeds of other jobs. Whether this practice violates section 713.34(3) depends on the intent of the contractor. Considering the elements of embezzlement discussed above, it is apparent that a contractor may inadvertently misdirect funds without an intent to defraud. In that situation, the statutory presumption of intent to defraud may be rebutted by evidence showing that, even though the contractor misdirected funds while a bill for labor, materials, or services incurred in improving the property is due (or may become due) but remains unpaid, the misdirection was without intent to defraud. It is then for the jury to determine whether the contractor has successfully rebutted the State's prima facie case. We reject appellees' contention that it is not possible for an honest contractor to operate without violating section 713.34(3), and we hold that this statute is not overbroad.
In summary, we hold that section 713.34(3), Florida Statutes, is not unconstitutionally overbroad or vague. The presumption of prima facie evidence of intent within the statute is also constitutional. All other bases on which the trial court anchored its holding have been considered and are without merit. Therefore, the order of dismissal holding section 713.34(3) unconstitutional is hereby reversed, and the case is remanded for trial.
It is so ordered.
BOYD, OVERTON and ALDERMAN, JJ., concur.
SUNDBERG, C.J., dissents with an opinion with which ENGLAND and McDONALD, JJ., concur.
SUNDBERG, Chief Justice, dissenting.
Although the precedents setting the appropriate standard for testing criminal presumptions are unclear in Florida, I submit that the presumption utilized in section 713.34(3), Florida Statutes (1979), meets neither of the tests heretofore articulated.
The United States Supreme Court in setting standards for statutory presumptions began with a rational connection test in Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), proceeded to a "more likely than not" test in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and culminated in an ambiguous combination of "more likely than not" with "beyond a reasonable doubt" standard in Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). Florida has examined the issue in MacMillan v. State, 358 So.2d 547 (Fla. 1978), and Fitzgerald v. State, 339 So.2d 209 (Fla. 1976). MacMillan applied the "more likely than not" test, though it equated it to the rational connection standard. That case did not need to reach the reasonable doubt standard since the statute did not meet the lower "more likely than not" standard. Fitzgerald apparently applied a reasonable doubt standard, interpreting Barnes to require satisfaction of this highest standard.
It is clear to me that in the course of human experience it is neither "more likely than not" nor "beyond a reasonable doubt" that a contractor intends to defraud simply because material and labor costs remain unpaid after an advance of contract funds by the owner. As a matter of judicial knowledge, it is common practice in the construction industry to treat contract receipts as fungible for purposes of defraying labor and material costs in subdivision developments. In our inflationary economy with material costs escalating daily, it has been almost essential to buy building materials in advance, in bulk amounts for use on multiple house "starts." To do otherwise would result in a further increase in residential housing prices, which already strain *809 the imagination. No contractor has felt obligated to match up invoices against revenues for each job contracted  on a trust accounting, "collect-on-delivery" basis  anymore than the local haberdasher has felt bound to apply a customer's layaway payment against the invoice for the particular three piece suit selected.
Because an impermissible presumption is employed by section 713.34(3), I would affirm the trial judge, and for the same reason I dissent from the majority opinion.
ENGLAND and McDONALD, JJ., concur.