# STATE OF FLORIDA v. FIRTELL

Case No. 85-13263MM10

County Court, Broward County

September 9, 1985

## APPEARANCES OF COUNSEL

**Emilie M. Tracy,** Assistant State Attorney, for plaintiff.
**Paul Stark** for defendant, David Firtell.
**David Vinikoor** for defendant, Roberta Firtell.

## OPINION OF THE COURT

WILLIAM W. HERRING, County Judge.

This cause having come on to be heard at hearing held on August 19, 1985 on the Defendants Firtells' sworn motions to dismiss and the Court having examined the motions, the State's traverses and heard argument as to the law applying to the undisputed material facts and granted the motions under the authority of Rule 3.190(c)(4), Fla. R. Cr. P.; and *Majors v. State,* 247 So.2d 446 (Fla. 1st DCA 1971), cert. den. 250 So.2d 898, it is

ORDERED AND ADJUDGED that the Defendants', David Firtell

and Roberta Firtells', Rule 3.190(c)(4) sworn motions to dismiss are granted with prejudice on the merits, the Court making the following findings of fact-conclusions of law:

1. Defendant David Firtell in Count I of the information is charged with ". . . knowingly permit(ting) a telephone under his control to be used for the purpose of making telephone calls, without disclosure of identity and with intent to annoy, abuse, threaten, or harass George Izzo or Marlene Izzo at the number called, contrary to F.S. 365.16(2)," on January 24, 1985, and is similarly charged in Counts III and V with permitting harassing telephone calls to Doris Cantor or Bernard Cantor on January 26 and 27, 1985 and to Nat Regenstreif or Vivian Regenstreif on January 26 and 27, 1985, respectively.

2. Defendant Roberta Firtell is charged with the same, exact offenses as her husband David, Count II against her corresponding with Count I against her husband, Count IV against her corresponding with Count III against her husband, and Count VI against her corresponding with Count V against her husband. (Why these co-defendants were not simply co-charged with the same crimes in a three-count information is a curious mystery to the Court, unless the State were unsuccessfully attempting to avoid the result effected by this order.)

3. Dealing with substance over form, it is clear that these husband-wife co-defendants are *jointly charged* with the *same* three offenses.

4. The Defendants' sworn motions to dismiss, which are virtually identical and track each other subparagraph by subparagraph, assert in paragraphs n-p thereof that the involved respective alleged victims are unable to identify who made any of the "hang up" telephone calls; there is no evidence that either co-defendant separately and individually had control of the telephone from which the calls originated; and there is no evidence that either co-defendant separately and individually knowingly permitted a telephone under his or her control to be used to make harassing telephone calls.

5. The State's traverses denied the latter two subparagraph averments, 5(o) and 5(p), of the Defendants' motions.

6. Those traverses, although made in apparently the utmost good faith, ignore and are at variance with cardinal, fundamental concepts of criminal law relative to due process and the right to a fair trial. Bottom line, the State is saying, "We don't know which of the two of you permitted your residence telephone to be used to make these

66

numerous harassing calls, so we'll just charge you both." Aside from the facts that there is no husband-wife unity of interest, common-law or otherwise in the context of the criminal law, and that there is a husband-wife testimonial privilege, codified under Section 90.504, Florida Statutes, the charging procedure herein has been expressly condemned by the First District Court of Appeal in *Majors*, supra at 447-448. There, the State charged two co-defendants with committing the same aggravated assault, yet adduced at trial the testimony of four witnesses that the appellant did the shooting and that of four other witnesses that the co-defendant was the culprit (the latter was acquitted). There was no evidence whatsoever that the defendants conspired together or that they aided and abetted each other in the commission of the crime charged. The appellant's conviction was reversed on a holding that the prosecution case "created a reasonable doubt as a matter of law". The State could not force the co-defendants to "fight it out" before the jury as to who was guilty while sitting back and watching. The appellant's rights to a fair trial and due process had been violated. The Court observed that civil law concepts of joint and several liability and interpleader have no proper place in the criminal law as to which a defendant possesses the presumption of innocence which is removed only when the charge against him has been proved beyond and the exclusion of every reasonable doubt. While it is reasonably certain, because of the privilege and other obvious reasons, that the Firtells will not "fight it out" between themselves, the *Majors* decision is still squarely on point, requiring the grant of Defendants' motions.

7. An equally cogent analogy may be made with a situation in which the accused is charged with possession of a controlled substance. The case law emphatically points out that where two or more persons have joint possession of the premises or vehicle in which the drugs are located, the fact of joint possession of those premises or vehicle is not legally sufficient in and of itself to withstand a motion for judgment of acquittal, as to the essential elements of the defendant's knowledge of the drugs' presence on the premises and the ability to maintain control over them. Those essential elements may not be inferred, but must be established by proof. "Such proof may consist either of evidence of incriminating statements and circumstances from which a jury might lawfully infer knowledge by the accused of the drugs' presence on the premises." See *Kickasola v. State*, 405 So.2d 200 at 201 (3rd DCA Fla. 1981); and *Spataro v. State*, 179 So.2d 873 at 877 (2d DCA Fla. 1965).

8. If the State is relying on an implicit rebuttable presumption of

knowingly permitting a telephone, under each Defendant's *joint* control with the other as well as of the premises involved, to be used to make harassing calls, flowing from the fact alone of joint possession-control over the premises and telephone, such presumption would be a manifestly unconstitutional one, under the "more likely than not" standard. See *Mac Millan v. State*, 358 So.2d 547 at 549-550 (Fla. 1978), in which the rebuttable presumption in the larceny of electricity statute was held unconstitutional for just the same reason. There, the proved fact was actual possession of premises on which the electrical meter had been tampered with and the presumed facts were the intent to tamper with the meter connection and the tampering itself.

9. Lastly, the State attempts to distinguish the knowing permitting of calls to be made when the accused has control over the telephone and premises from the making of the harassing calls themselves. There is no affirmative duty to prevent a crime from occurring. Mere knowledge that a crime is being or has been committed is legally insufficient in and of itself to prove a crime. Aiding and abetting is established by proof of affirmative acts or words, not mere knowledge alone. See *Douglas v. State*, 214 So.2d 653 (3rd DCA Fla. 1968). Is the State seriously contending that either spouse in this cause had an affirmative duty to prevent the other from making harassing telephone calls or failing that, to report the offending spouse? Notions of vicarious liability generally have no more applicability to the criminal law than do those of joint and several liability. And if the State is arguing that the statute creates some kind of accessory-after-the-fact theory of culpability, such criminal liability does not extend to spouses or other immediate family members under the underlying concept-notion that blood is thicker than water, under the common law. The material, undisputed facts, as a matter of law, do not make out a prima facie case of guilt that would withstand a motion for judgment of acquittal made at the close of the State's cash-in-chief.