KLEIN, Judge.
The appellee was charged with theft of electricity as a result of the discovery of a wire having been inserted in a hole which had been drilled in his electric meter. The statute under which he is charged provides that these facts constitute prima facie evidence of a violation of the statute, and the county court held this provision unconstitutional under the principle that the provision so restricts a fact-finder’s freedom to determine whether the evidence reflects guilt beyond a reasonable doubt as to amount to a denial of due process. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). We have jurisdiction because, along with dismissing the case, the county court certified the issue as a question of great public importance pursuant to Florida Rule of Appellate Procedure 9.030(b)(4)(B). We reverse.
The statute in question, section 812.14(3), Florida Statute (1991), entitled “Trespass and larceny with relation to utility or cable television fixtures,” provides in subsection (3):
The presence on property in the actual possession of a person of any device or alteration which effects the diversion or use of the services of a utility, cable television service, or community antenna line service so as to avoid the registration of such use by or on a meter installed by the utility or so as to otherwise avoid the reporting of use of such service for pay *964 ment shall be prima facie evidence of the violation of this section by such person; however, this presumption shall not apply unless:
(a) The presence of such device or alteration can be attributed only to a deliberate act in furtherance of an intent to avoid payment for utility services;
(b) The person charged has received the direct benefit of the reduction of the cost of such utility service; and
(e) The customer or recipient of the utility services has received the direct benefit of such utility service for at least one full billing cycle. (Emphasis added).
The legislature passed this provision in 1979, after its predecessor was held unconstitutional on its face in MacMillan v. State, 358 So.2d 547 (Fla.1978). The trial court concluded that despite the changes in the statute, this provision is still unconstitutional on its face under MacMillan.
The portion of the statute held unconstitutional in MacMillan provided:
“(3) The existence, on property in the actual possession of the accused, of any connection, wire, conductor, meter alteration, or any device whatsoever, which effects the diversion or use of the service of a utility or a cable television service or community antenna line service or the use of electricity, gas, or water without the same being reported for payment as to service or measured or registered by or on a meter installed or provided by the utility shall be prima facie evidence of the intent to violate, and of the violation of, this section by such accused. The use or receipt of the direct benefits from the use of electricity, gas, water, heat, oil, sewer service, telephone service, telegraph service, radio service, communication service, television service, or television community antenna line service derived from any tampering, altering, or injury of any connection, wire, conductor, device, altered meter, pipe, conduit, line, cable, transformer, amplifier, or other apparatus or device shall be prima facie evidence of intent to violate, and of the violation of, this section by the person or persons so using or receiving such direct benefits.” (Emphasis added).
Section 812.14(3), Fla.Stat. (Supp.1976).
While we are not persuaded that the changes made by the legislature would make the provision constitutional under the analysis used by the MacMillan court, post -Mac-Millan decisions by the United States Supreme Court and the Florida Supreme Court hold that the constitutionality of a statutory provision such as this is not to be determined facially, but rather in light of the facts and jury instructions. The trial court’s determination that this provision is unconstitutional on its face is therefore erroneous.
In MacMillan our supreme court quoted from Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), in which the Supreme Court stated:
[T]he due process clauses of the Fifth and Fourteenth Amendments set limits upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated....
Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts. (Emphasis added).
MacMillan, 358 So.2d at 548-49.
In addition to Tot, the MacMillan court relied on Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), in which the Supreme Court discussed the Tot “rational connection” test and explained that in order for a statutory presumption to be constitutional there had to be “substantial assur *965 ance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.” Relying further on Tot and Leary, the Florida Supreme Court in MacMillan held that the predecessor to section 812.14(3) was facially unconstitutional, stating:
We find that it cannot be said with substantial assurance that the presumed fact that the defendant is guilty of violation of Section 812.14, Florida Statutes (Supp. 1976), is more likely than not to flow from the proved fact of possession of the premises or receipt of benefits. One in actual possession of property or one receiving direct benefits would not more likely than not be the guilty person. Such an inference is irrational and arbitrary. Common experience tells us that the device or apparatus tampered with or altered is generally on the outside of a building and accessible to anyone; that the direct benefits from the use of electricity, gas, water, heat, oil, sewer service, telephone service, telegraph service, radio service, communication service, television service, or television community antenna line service are commonly derived by any occupant of the premises, including family members, business partners, associates, employees and others; and that the billing which would constitute notice of possible alteration is done no more frequently than monthly. Furthermore, there are many ways to make an alteration which are so simple in nature that a prankster, a vandal or any angry neighbor could utilize them to cause the one in possession of the premises to receive benefits therefrom without his knowledge and, thereby, subject him to the presumption.
Id. at 549-50.
After MacMillan was decided, the Supreme Court, in Ulster County Court v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), clarified its earlier decisions on these statutory presumptions which it had previously recognized were “not all together clear.” See Barnes v. United States, 412 U.S. 837, 843, 93 S.Ct. 2357, 2361, 37 L.Ed.2d 380 (1973).
In Allen, the issue was the constitutionality of a New York statute providing that the presence of a firearm in an automobile is “presumptive evidence of its possession by all persons occupying such automobile” with certain exceptions. The New York Court of Appeals held the provision unconstitutional on its face, and the Supreme Court reversed, deciding that this was not a mandatory presumption, but rather a “permissive inference or presumption.” Allen, 99 S.Ct. at 2224. The Court explained that whereas a mandatory presumption requires the trier-of-faet to find the elemental fact of the crime upon proof of the basic fact and is generally examined on its face to determine its validity, a permissive presumption or inference allows, but does not require, the trier-of-fact to find the elemental fact upon proof of the basic fact. A permissive presumption or inference is evaluated for constitutionality under the facts of the case, not on its face. Allen, 99 S.Ct. at 2224-25.
Applying this rationale, the Allen Court concluded that there was a rational connection between the basic facts and the ultimate facts presumed. Id. at 2228. It also emphasized that the trial court’s instructions to the jury made it clear that the provision was only permissive, that it could be ignored, and that there was a mandatory presumption of innocence. Id. at 2226. The provision was, therefore, constitutional.
The statute in the present ease uses the term “presumption,” and our supreme court in MacMillan referred to the predecessor provision as a presumption. The United States Supreme Court decisions up to and including Allen used the words “presumption” and “inference” interchangeably, when referring to a provision which it deemed permissive. Allen, 99 S.Ct. at 2224. In Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985), the Supreme Court began to limit itself to using the term “inference” where the provision is permissive. Francis, 105 S.Ct. at 1971.
The Florida Supreme Court recognized the significance of Allen in State v. Rolle, 560 So.2d 1154 (Fla.1990). In Rolle the issue was the constitutionality of our DUI statute, which provided that a 0.10 percent blood- *966 alcohol level “shall be prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired.” Notwithstanding that the statute in Bolle contained the same language, “shall be prima facie evidence,” as the provision held unconstitutional 12 years earlier in MacMillan, our supreme court concluded in Rolls that the DUI statute created a “permissive inference, not an unconstitutional presumption.” Rolle, 560 So.2d at 1157.
Instead of evaluating the statute on its face, as it did in MacMillan, the Rolls court evaluated it in light of the record, specifically the manner in which the jury was instructed, and concluded that there was no constitutional error.[1] Citing Allen, the Rolle court emphasized that the words in the DUI statute, “shall be prima facie evidence,” were crucial to the determination that the provision created a permissive inference, not a mandatory presumption. Rolle, 560 So.2d at 1157. Because “shall be prima facie evidence” are the statutory words used in the present case, we can arrive at no other conclusion but that this is a permissive inference; thus, constitutionality is not determined facially, but rather on the facts in each case.
In Rolle, the Florida Supreme Court referred to the rational connection test by quoting from Allen, but did not discuss it, presumably because the facts in Rolle (alcohol in defendant’s blood) easily passed the test. The rational connection test bears discussion here.
Unlike Allen, and Rolle, this ease did not proceed to trial. Rather, defense counsel advised the court at a pre-trial hearing on constitutionality that the charges were based on the fact that the electric meter on the outside of defendant’s home was made inoperable by a wire having been inserted through a hole which had been drilled.
In Allen, as we noted earlier, the New York statute provided that the presence of a firearm in an automobile was “presumptive evidence of its possession by all persons occupying such automobile.” The Supreme Court, after considering all of the facts, held the provision constitutional as applied to three occupants of an automobile, where two handguns were in an open handbag of a fourth occupant and were visible to the officer who had stopped the vehicle for speeding. If the New York statute in Allen passes the rational connection test, then the Florida statute, as applied to the facts in this case so far as we know them, also passes the rational connection test. In our opinion the odds are just as good that the defendant in the present case is the culprit as the odds were that all of the occupants of the vehicle in Allen were in possession of the handguns in the open handbag of one of the occupants.
In addition to Allen, State v. Ferrari, 398 So.2d 804 (Fla.1981), also supports our conclusion that the present inference passes the rational connection test. In Ferrari, the supreme court held that a statutory provision which made it “prima facie evidence” of criminal fraud for a contractor to use a payment made by the owner for any purpose other than paying for the labor or services performed on the owner’s property passed the rational connection test. Justice Sundberg dissented, stating:
As a matter of judicial knowledge, it is common practice in the construction industry to treat contract receipts as fungible for purposes of defraying labor and material costs in subdivision developments. In our inflationary economy with material costs escalating daily, it has been almost essential to buy building materials in advance, in bulk amounts for use on multiple house “starts.” To do otherwise would result in a further increase in residential housing prices, which already strain the imagination. No contractor has felt obligated to match up invoices against revenues for each job contracted — on a trust accounting, “collect-on-delivery” basis— anymore than the local haberdasher has felt bound to apply a customer’s layaway payment against the invoice for the particular three piece suit selected.
*967 Id. at 808. If the Ferrari inference, notwithstanding the dissent, passes the rational connection test, the inference in this statute also passes it.[2]
We are not unmindful of the fact that as a district court of appeal we cannot overrule our supreme court’s decision in MacMillan; however, we are convinced that the supreme court has itself overruled MacMillan in Ferrari and in Rolle. As authority for its holding that the inference in the DUI statute was constitutional, the Rolle court cited State v. Waters, 436 So.2d 66 (Fla.1983) (stealthy entry prima facie evidence of intent to commit burglary); Ferrari-, and Fitzgerald v. State, 339 So.2d 209 (Fla.1976) (failure to return rental car within 72 hours of due date prima facie evidence of auto theft). Although Mac-Millan was decided in 1978, after Fitzgerald, the Rolle court did not attempt to distinguish the statute in MacMillan from the statute in Rolle. We cannot distinguish the statutes involved in MacMillan and Rolle, nor can we reconcile the decisions. Accordingly, although we recognize that we are creating conflict with MacMillan, we are satisfied that we should follow Rolle, particularly in light of the refinement of this area of the law in the interim.
Even though we have concluded that the inference, considered in light of the bare-bones facts related to the court by counsel, passes the rational connection test, the final determination of whether it is constitutional should be made in light of the facts in evidence at trial. If the trial court concludes, based on the evidence, that the inference passes the rational connection test, then the jury should be instructed on it in accordance with Rolle.
Reversed.
HERSEY and WARNER, JJ., concur.

. In Wilhelm v. State, 568 So.2d 1 (Fla.1990), our supreme court held that a jury instruction different from that given in Rolle, but based on the same provision of the DUI statute, did violate defendant's constitutional rights.

. The Eleventh Circuit subsequently held the Ferrari provision unconstitutional in Miller v. Nor-vell, 775 F.2d 1572 (11th Cir.1985). The supreme court, however, cited Ferrari as authority for its 1990 decision in Rolle, noting that Miller was contrary to Ferrari. Miller may be of limited precedential validity in light of Defuentes v. Dug-ger, 923 F.2d 801 (11th Cir.1991).