### JOHN CORDELL v. STATE OF FLORIDA

25 So. (2nd) 885    January Term, 1946
January 8, 1946    En Banc
Rehearing granted March 22, 1946

*Coe & Eggart,* for appellant.

*J. Tom Watson,* Attorney General, and *George M. Powell,* Assistant Attorney General, for appellee.

PER CURIAM:

Judgment affirmed.

TERRELL, BUFORD, ADAMS and SEBRING, JJ., concur.

CHAPMAN, C.J., BROWN and THOMAS, JJ., dissent.

On Rehearing Granted

CHAPMAN, C. J.:

The appellant, John Cordell, was informed against, placed upon trial, and convicted by a jury in Santa Rosa County, Florida, for the larceny of one spotted Poland-China boar hog, the property of B. O. Jernigan. He was by the trial court sentenced to serve a term of three years in the Florida State Prison. The record discloses that within the time fixed by statute a motion for a new trial was made on the sole ground that the verdict of the jury was against the evidence. The trial court denied the motion and the defendant appealed.

The only question for adjudication here is the sufficiency of the evidence adduced by the State of Florida in the trial of the cause in the court below to sustain the verdict and judgment challenged here on appeal. Larceny is the felonious taking and carrying away from any place the personal property of another, without his consent, by a person not entitled to the possession thereof, with the intent to deprive the owner of the property and to convert it to the use of the taker or to some person other than the owner. Brent v. State, 127 Fla. 626, 173 So. 675; Kempt v. State, 146 Fla. 101, 200 So. 368. It is essential, in order to sustain a conviction of larceny, that the evidence adduced by the State establishes beyond a reasonable doubt that the property was taken *animo furandi.* Helton v. State, 135 Fla. 458, 185 So. 864; Cooper v. State, 82 Fla. 365, 90 So. 375; Jarvis v. State, 73 Fla. 652, 74 So. 796.

It is fundamental law and well established in Florida that a person charged with crime is entitled to the presumption of innocence. The burden of proof of every essential element of the crime by law is cast upon the State of Florida and this presumption of innocence accompanies a defendant through

each step of the trial until the same is overcome by testimony establishing the guilt of the accused beyond a reasonable doubt. Roe v. State, 96 Fla. 723, 119 So. 118; Savage v. State, 152 Fla. 367, 11 So. (2nd) 778. If a reasonable doubt exists in behalf of an accused arising from a consideration of all the evidence adduced during the progress of the trial or the lack of such evidence, then a conviction under such conditions and circumstances as a matter of law cannot be sustained. Baggett v. State, 94 Fla. 252, 114 So. 236.

The record discloses conflicts and disputes as to the ownership of one black and white spotted Poland-China boar hog, which at the time of the trial was in a truck near the court house and was the subject of of a replevin suit (not then tried) between the complaining State witness, B. O. Jernigan, and John Cordell, the appellant here. Jernigan and Cordell were farmers and lived in the same community in Santa Rosa County for some time prior to early 1945. Each of them acquired during the year 1943 by purchase a pure blooded Poland-China boar pig or shoat for stock purposes. Mr. Jernigan acquired his during January, 1943, from a Mr. Mc-Caskell of Jay, Florida, when it was about two months old and weighed sixty pounds. He took it to his farm situated near the farm of Cordell and never marked it, but permitted it to go on the open range about his farm. In the record there is but little, if any, testimony that is in conflict with Mr. Jernigan's testimony Supra, or with the State witnesses about the purchase and raising of the black and white spotted boar pig.

The record discloses further that in October, 1943, Claude Moody of Covington County, Alabama (not far from Santa Rosa County) let Mr. Cordell have a black and white spotted Poland-China Boar pig for stock purposes. The pig or shoat at the time weighed some fifty or sixty pounds. The age of the shoat at the time Mr. Cordell acquired it is not clear, but apparently was around two or three months old in October, 1943. The shoat was kept about the farm of Mr. Cordell after October, 1943. The exact distance between the farms of Mr. Jernigan and Mr. Cordell is not shown, but we infer that they lived in the same community about a mile or so apart. Mr. Jernigan permitted his stock hog to run at large, while Mr.

Cordell kept his in an enclosure. There is no dispute or claim that Mr. Jernigan did not own such a stock hog or that Mr. Cordell did not own such a stock hog.

There is no dispute about Mr. Jernigan spending considerable time in keeping up with or hunting in the neighborhood for his stock hog, which he permitted to run at large. It is quite true that about December, 1944, Mr. Jernigan took his stock hog out of the peanut field where Mr. Cordell kept his hogs. There is no dispute that Mr. Cordell at the time owned other hogs and that he had some in a pen when Mr. Jernigan got his stock hog out of the Cordell peanut field. The disputes and conflicts in the evidence center about the identity of the hog found in Mr. Cordell's possession after he moved to another farm a few miles from the Jernigan community.

Mr. Jernigan searched the range for his stock hog in late 1944 or early 1945 without finding him, and as a part of the search went to the place where Mr. Cordell moved some few miles away. There in a pen on the Cordell place Mr. Jernigan found a hog which he identified as his, and with equal candor and sincerity Mr. Cordell asserts that the same hog is his property. A truck driver moving the Cordell hogs testified that he hauled several hogs for Mr. Cordell and the one in question resembled one he hauled from the Jernigan community to the Cordell home some few miles away. The State witnesses either identified the hog as the property of Jernigan or as resembling it very much, while Mr. Cordell and his witnesses identified the hog as the one bought in Covington County, Alabama, and brought to the Cordell farm in the Jernigan community in the Fall of 1943.

We thus have a disputed ownership of a hog by two farmers and former neighbors and each having during the year 1943 acquired by purchase a black and white spotted Poland-China pure blooded boar pig or shoat, weight around sixty pounds for stock purposes—one of which came from Jay, Florida and the other from nearby Covington County, Alabama. Neither of the parties marked their pig or shoat. The Jernigan hog was approximately six months older than the Cordell hog. Cordell kept his stock hog in a pen at his home, while Jernigan permitted his to go on the open range

about his farm and on one occasion was found by him in the peanut field of Cordell. The hog was removed therefrom without a dispute between the men at that time about the identity of the Jernigan hog.

The evidence adduced by the State to sustain the *animo furandi or* intent to steal on the part of Mr. Cordell necessarily must rest on certain incriminating conditions and circumstances from which guilt can or may be deduced or inferred viz: (1) Cordell moved or caused to be taken from its usual range the Jernigan hog; (2) he transferred the Jernigan hog to his new home some few miles from the Jernigan community; (3) the hog was placed in an enclosure at the new home in such a manner as to make it difficult for all others to see it; (4) Cordell's first refusal to permit Jernigan to see his hog in this enclosure; (5) the resentment and anger of Cordell when Jernigan asked for the privilege of seeing the hog in the enclosure at Cordell's home; (6) an opinion by an expert as to the age of this hog based on an examination of its teeth and tusks when the difference in age of the two hogs was approximated in months.

The answer to these several inferences is, first, the admissibility of the expert testimony about the age of the hog taken from the Cordell farm, based on an examination of the tusks of the hog as made by the expert was not raised in the lower court or here presented; second, the inference of concealment of the hog by Cordell was explained when it was shown that other hogs were in the same pen or had been kept there and the cracks about the enclosure had been stopped to keep the chickens out of the pen; third, the inference that Cordell was guilty of taking the hog because he became angry when Jernigan asked to see the hogs in the pen near the house can be easily understood in that Cordell resented the idea that Jernigan thought he (Cordell) had stolen his hog. It is reasonable to assume that the average citizen would resent and become indignant when charged by another with the crime of stealing. Fourth, a reasonable interpretation of all the evidence adduced suggests the innocence of the appellant. His guilt is inconsistent with a fair and reasonable construction of all the testimony. Fifth, the en-

closure of the hogs after Cordell moved was like he maintained while in the Jernigan settlement. Sixth, the truckman hired by Cordell to haul the hogs failed to see any improper action or conduct on the part of Cordell. Seventh, the State of Florida simply failed to carry the burden of proof cast on it by law to the effect that the boar hog was the property of B. O. Jernigan. It is quite true that the jury made such a finding, as reflected by its verdict, but the evidence to sustain its finding is not in the record.

It has been the settled law of Florida for many years that after a studious and careful consideration of all the evidence appearing in the record that the ends of justice will be best subserved in granting a new trial because of the insufficiency of the testimony adduced and relied upon by the prosecution to establish essential facts necessary to constitute the crime. —then, under these conditions and circumstances, it becomes the duty of this Court to reverse the cause for a new trial. Lowe v. State, 154 Fla. 730, 19 So. (2nd) 106; Stephens v. State, 140 Fla. 163, 191 So. 294; Reed v. State, 137 Fla. 768, 189 So. 21; Skiff v. State, 107 Fla. 90, 144 So. 323; Nims v. State, 70 Fla. 530, 70 So. 565; Fuller v. State, 92 Fla. 973, 110 So. 528; Ming v. State, 89 Fla. 280, 103 So. 618; Platt v. State, 65 Fla. 253, 61 So. 502; Townsend v. State, 95 Fla. 139, 116 So. 7; Coker v. State, 83 Fla. 672, 93 So. 176; Knowles v. State, 86 Fla. 270, 97 So. 716; Davis v. State, 76 Fla. 179, 79 So. 450.

The order and judgment of affirmance previously entered is hereby vacated, set aside, and held for naught and on this rehearing granted the judgment of the lower court appealed from is reversed and a new trial awarded.

TERRELL, BROWN and THOMAS, JJ., concur.

BUFORD, ADAMS and SEBRING, JJ., dissent.