560 So.2d 1154 (1990)
STATE of Florida, Appellant,
v.
Carlton ROLLE, Appellee.
No. 72383.
Supreme Court of Florida.
March 1, 1990.
Rehearing Denied June 14, 1990.
Robert A. Butterworth, Atty. Gen., and Richard G. Bartmon and Miles E. Ferris, Asst. Attys. Gen., West Palm Beach, for appellant.
Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Asst. Public Defender, West Palm Beach, for appellee.
EHRLICH, Chief Justice.
We have for review Rolle v. State, 528 So.2d 1208 (Fla. 4th DCA 1988), in which the district court held unconstitutional section 316.1934(2)(c), Florida Statutes (1985), and the corresponding jury instructions. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and quash the decision of the district court below.
Rolle was charged and convicted of felony driving under the influence pursuant to section 316.193(2)(b), Florida Statutes (1985). That statute prescribes felony sanctions upon a fourth or subsequent violation of the drunk driving law, section 316.193(1), Florida Statutes (1985). Rolle was sentenced to one year in the county jail.
The district court reversed the conviction and sentence and remanded the cause for a new trial. The district court concluded that section 316.1934(2)(c), Florida Statutes (1985), and the corresponding jury instruction shifted the burden of proof to the defendant on an element of the crime, impairment, in violation of the due process clause of the United States Constitution. Rolle, 528 So.2d at 1209-10. We disagree.
In determining whether the challenged statute and jury instruction constitute a permissive inference or an unconstitutional presumption, a review of the relevant history of chapter 316 is both instructive and enlightening. Prior to 1974, driving under the influence (DUI) could be proven in only one way, by proof of impairment. *1155 § 316.028(1), Fla. Stat. (1973).[1] In 1974, the legislature created the offense of driving with an unlawful blood-alcohol level (DUBAL). Ch. 74-384, § 1, Laws of Fla. (codified at § 316.028(3), Fla. Stat. (Supp. 1974)). At that time, DUBAL was clearly a separate offense from DUI. It was located in a separate paragraph of the statute from DUI, and contained separate, and lesser penalties for conviction. Compare § 316.028(1), (2), Fla. Stat. (Supp. 1974) with § 316.028(3)-(4), Fla. Stat. (Supp. 1974). Under this statutory scheme, if the state could not prove impairment the defendant could still be convicted of DUBAL. This Court upheld DUBAL against constitutional attack in Roberts v. State, 329 So.2d 296 (Fla. 1976).
However, in 1982 the statutory landscape changed dramatically. The legislature substantially reworded the statute, consolidating DUI and DUBAL and providing identical penalties for conviction. Ch. 82-155, § 2, Laws of Fla. (codified at § 316.193(1)(a)-(b), Fla. Stat. (Supp. 1982)). It is this statutory framework which concerns us today.
Section 316.193(1), Florida Statutes (1985), provides:
A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if such person is driving or in actual physical control of a vehicle within this state and:
(a) The person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that his normal faculties are impaired [DUI]; or
(b) The person has a blood alcohol level of 0.10 percent or higher [DUBAL].
It is clear that this statute now creates one offense, driving under the influence, which may be proven in either of two ways: (a) by proof of impairment, or (b) by proof of a blood-alcohol level of 0.10 percent or higher. Because proof of either (a) or (b) is sufficient, if the state proves beyond a reasonable doubt that the defendant was "driving or in actual physical control of a vehicle within this state," and had a blood-alcohol level of 0.10 percent or higher, then the state need not prove impairment. However, if the state cannot prove that the defendant had a blood-alcohol level of 0.10 percent or higher, it may still obtain a conviction if it can prove impairment beyond a reasonable doubt.
At Rolle's trial, the state introduced the results of two breath tests. The first recorded his blood-alcohol level at 0.18 percent and the second at 0.20 percent. Over defense objection, the trial judge instructed the jury as follows:
If you find from the evidence that the Defendant had a blood alcohol level of .10 percent or more, that evidence would be sufficient by itself to establish that the Defendant was under the influence of alcohol to the extent that his normal faculties were impaired. However, such evidence may be contradicted or rebutted by other evidence.
(Emphasis added.) This instruction derived from section 316.1934(2), Florida Statutes (1985),[2] which creates three categories of blood-alcohol levels and assigns a different evidentiary value to each:
(a) If there was at that time 0.05 percent or less by weight of alcohol in the person's blood, it shall be presumed that the person was not under the influence of alcoholic beverages to the extent that his normal faculties were impaired.
(b) If there was at that time in excess of 0.05 percent but less than 0.10 percent by weight of alcohol in the person's blood, such fact shall not give rise to any presumption that the person was or was not under the influence of alcoholic beverages to the extent that his normal faculties were impaired, but such fact may be considered with other competent evidence in determining whether the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired.

*1156 (c) If there was at that time 0.10 percent or more by weight of alcohol in the person's blood, that fact shall be prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired. Moreover, such person who has a blood alcohol level of 0.10 percent or above is guilty of driving, or being in actual physical control of, a motor vehicle, with an unlawful blood alcohol level.
... . The foregoing provisions of this subsection shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired.
(Emphasis added.)
In County Court v. Allen, 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979), the United States Supreme Court discussed the various evidentiary devices at length:
The most common evidentiary device is the entirely permissive inference or presumption, which allows  but does not require  the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. In that situation the basic fact may constitute prima facie evidence of the elemental fact... . Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.
A mandatory presumption is a far more troublesome evidentiary device. For it may affect not only the strength of the "no reasonable doubt" burden but also the placement of that burden; it tells the trier that he or they must find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts.
(Citations omitted; emphasis added.) In Francis v. Franklin, 471 U.S. 307, 315-16, 105 S.Ct. 1965, 1971-72, 85 L.Ed.2d 344 (1985), the Court further stated that in reviewing the constitutionality of a jury instruction, a specific instruction "must be considered in the context of the charge as a whole," and the "question is whether a reasonable juror could have understood the [specific instruction] as a mandatory presumption that shifted to the defendant the burden of persuasion on [an] element."
In this case, we believe that a reasonable juror would have understood the challenged instruction as allowing proof of a blood-alcohol level of 0.10 percent or higher to be evidence of impairment, not as requiring a finding of impairment in that circumstance. The language "would be sufficient by itself to establish," is not in any way mandatory and indicates that, should the jury wish to accept it, the evidence of a blood-alcohol level over 0.10 percent could provide the basis for a conviction. Further, the statutory framework described above was clearly explained to the jury in this case by both the prosecutor in her closing argument and by the judge in his instructions. To the extent the challenged instruction allowed the jury to substitute proof of a blood-alcohol level of 0.10 percent or higher for proof of impairment it correctly stated the law. Essentially, section 316.193 allows proof of a blood-alcohol level of 0.10 percent or higher to be substituted for proof of impairment  not as an unconstitutional presumption, but as an alternate element of the offense.[3] We *1157 therefore find no constitutional error in the challenged jury instruction.
We also find that section 316.1934(2)(c), Florida Statutes, creates a permissive inference, not an unconstitutional presumption.[4] Paragraph (a) clearly creates a presumption by its terms ("shall be presumed"). Paragraph (b) expressly authorizes only that a blood-alcohol level of 0.05-0.10 percent be admissible as evidence relevant to impairment ("may be considered with other competent evidence"), but states that no presumption shall arise from such evidence. The legislature clearly understood the language of presumptions but chose to use different language in paragraph (c) ("shall be prima facie evidence"). That difference is crucial. In Allen, the United States Supreme Court stated that with a permissive inference, "the basic fact may constitute prima facie evidence of the elemental fact." 442 U.S. at 157, 99 S.Ct. at 2224. Further, this Court has interpreted the language "shall be prima facie evidence" in other contexts as creating an inference. See State v. Waters, 436 So.2d 66 (Fla. 1983) (burglary); State v. Ferrari, 398 So.2d 804 (Fla. 1981) (misappropriation of construction funds), contra, Miller v. Norvell, 775 F.2d 1572 (11th Cir.1985), cert. denied, 476 U.S. 1126, 106 S.Ct. 1995, 90 L.Ed.2d 675 (1986); Fitzgerald v. State, 339 So.2d 209 (Fla. 1976) (auto theft). We see no reason to interpret such language differently in this context, especially as the statute expressly encourages the introduction of evidence besides blood-alcohol level. Further, "[i]f a statute may reasonably be construed in more than one manner, this Court is obligated to adopt the construction that comports with the dictates of the Constitution." Vildibill v. Johnson, 492 So.2d 1047, 1050 (Fla. 1986). See, e.g., Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815 (Fla. 1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984); Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So.2d 981 (Fla. 1981); Leeman v. State, 357 So.2d 703 (Fla. 1978).
Accordingly, we quash the decision of the district court below and remand for proceedings consistent with this opinion.
It is so ordered.
OVERTON, McDONALD, SHAW and GRIMES, JJ., concur.
BARKETT, J., concurs specially with an opinion, in which KOGAN, J., concurs.
BARKETT, Justice, specially concurring.
I concur in that portion of the majority's opinion that affirms the conviction under the theory that Rolle was shown to have a blood-alcohol level of 0.10 or higher (DUBAL).[1] The crime, driving under the influence (DUI), can be established by either of two means of proof, one of which is DUBAL. Because Rolle could have been lawfully convicted under that portion of the statute, any further analysis really is unnecessary, regardless whether the jury instruction in question created a "permissive inference" or a "rebuttable presumption." As long as the jury was properly instructed on the DUBAL theory, any error in the other theory was, in effect, harmless.
*1158 However, the majority opinion goes on to add that the jury instruction as it relates to the alternative DUI theory, proof of impairment, was constitutional. I cannot agree with this gratuitous conclusion.
I believe that the district court correctly concluded that the statutory presumption of impairment under the alternative DUI theory, and the corresponding jury instruction, shifted the burden of proof to the defendant in violation of due process rights. See Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); and Miller v. Norvell, 775 F.2d 1572 (11th Cir.1985), cert. denied, 476 U.S. 1126, 106 S.Ct. 1995, 90 L.Ed.2d 675 (1986).
Under federal and Florida law, due process guarantees protect a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) (emphasis supplied). Accord Morgan v. State, 392 So.2d 1315, 1316 (Fla. 1981); State ex rel. Boyd v. Green, 355 So.2d 789, 794 (Fla. 1978); State v. Kahler, 232 So.2d 166, 168 (Fla. 1970); Cordell v. State, 157 Fla. 295, 296, 25 So.2d 885, 886 (1946). To satisfy its burden of proof, the state must produce evidence of all the essential elements of the crime charged and persuade the factfinder of the defendant's guilt beyond a reasonable doubt.
Historically, the party with the burden of proof has been aided by evidentiary devices.[2] Among them are presumptions, either conclusive or rebuttable, and inferences.
In the criminal context, these evidentiary devices affront the constitutional guarantees of due process if they "undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." County Court v. Allen, 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979) (citing In re Winship, 397 U.S. at 358, 90 S.Ct. at 1069; Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)). To determine whether a particular device violates due process one must differentiate between inferences, which are permissive, and presumptions, which can be either conclusive or rebuttable but are always mandatory. Franklin, 471 U.S. at 314, 105 S.Ct. at 1971.
In Allen, the United States Supreme Court examined the evidentiary device that it has termed a "permissive inference."[3] The inference "allows  but does not require  the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant."[4]Allen, 442 *1159 U.S. at 157, 99 S.Ct. at 2224 (emphasis supplied). It is simply a "conclusion that may or may not be drawn that some fact is probably true... . Whether such a conclusion is warranted depends on the persuasiveness of the evidence." Harris, Constitutional Limits On Criminal Presumptions Of Changing Concepts Of Fundamental Fairness, 77 J.Crim.L. & Criminology 308, 310 (1986).
The constitutionality of an inference depends on whether there is a reasonable, logical, rational, and direct relationship between the proven fact and the inferred fact. If not, the inference violates due process, for it creates the risk of an erroneous factual determination and thus excuses the prosecution from proving every element beyond a reasonable doubt. A constitutionally valid inference requires "a `rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is `more likely than not to flow from' the former." Allen, 442 U.S. at 165, 99 S.Ct. at 2228 (quoting Leary v. United States, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969)) (footnote omitted). Accord Hilding v. State, 291 So.2d 111, 113 (Fla. 4th DCA), cert. denied, 296 So.2d 51 (Fla. 1974). E.g., Barnes v. United States, 412 U.S. 837, 843-46, 93 S.Ct. 2357, 2361-63, 37 L.Ed.2d 380 (1973) (unexplained possession of recently stolen property permits inference of guilty knowledge); State v. Young, 217 So.2d 567, 570-71 (Fla. 1968) (same), cert. denied, 396 U.S. 853, 90 S.Ct. 112, 24 L.Ed.2d 101 (1969).
A presumption, on the other hand, requires that "once some fact (a `basic' or `proven' fact) is established, some other fact at issue (the `presumed' fact) must be deemed true, at least provisionally." Harris, supra, at 310 (footnote omitted). See also Franklin, 471 U.S. at 314 n. 2, 105 S.Ct. at 1971 n. 2.[5]
When applied to the elements of a crime, a conclusive presumption always violates due process because it impermissibly relieves the state of its burden of proof. A rebuttable presumption violates due process when it shifts to the defendant the burden of proving an element of the crime.[6]Franklin, 471 U.S. at 314, 105 S.Ct. at 1971.
In Sandstrom, 442 U.S. at 510, 99 S.Ct. at 2452, the state charged the defendant with "deliberate homicide." Intent was an element of the crime. The jury was instructed that "the law presumes that a person intends the ordinary consequences of his voluntary acts." Such an instruction, the Court found, mandated a conclusive presumption that removed the need to prove the essential element of intent "once the State ha[d] proved the predicate facts giving rise to the presumption." Franklin, 471 U.S. at 314 n. 2, 105 S.Ct. at 1971 n. 2.[7] The Court concluded that this instruction *1160 violated the fourteenth amendment's requirement that the state prove every element of a criminal offense beyond a reasonable doubt. The jury in Sandstrom could have concluded either that the state was relieved of proving a necessary element or that the burden of persuasion had been shifted to the defendant. Hence, it violated the defendant's due process rights. Accord Dalswell v. State, 78 Fla. 394, 83 So. 286 (1919) (abrogating common law conclusive presumption that a boy less than fourteen years of age is incapable of committing rape); Dallas v. State, 76 Fla. 358, 79 So. 690 (1918) (in prosecution for statutory rape, the trial court improperly instructed the jury that the law presumes previous chaste character of the complaining witness).
More recently, in Franklin the Court considered a due process challenge to an instruction that specifically told the jury that the defendant could rebut the presumption of intent. Franklin had been charged with the capital offense of "malice murder." He defended by claiming that he lacked the requisite intent to kill. The focus of the Court's inquiry was upon two sentences from the instruction on the issue of intent:
"The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted" and ... "[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted."
Franklin, 471 U.S. at 311-12, 105 S.Ct. at 1969-70.
That instruction gave rise to the following constitutional concern:
[W]hether a reasonable juror could have understood the two sentences as a mandatory presumption that shifted to the defendant the burden of persuasion on the element of intent once the State had proved the predicate acts.
Id. at 316, 105 S.Ct. at 1972 (emphasis supplied). The Court reasoned that the instruction was constitutionally infirm because the word "presumed" cast the instructions into a command; moreover, the phrase "may be rebutted" could have been interpreted by a reasonable juror to require an inference of intent to kill or to place on the defendant an affirmative burden to prove lack of intent.[8]
The fact that the jury was told that the defendant could rebut such a presumption would not cure the constitutional infirmity. Although a "rebuttable presumption is perhaps less onerous [than a conclusive presumption] from the defendant's perspective," the Court noted, "it is no less unconstitutional." Franklin, 471 U.S. at 317, 105 S.Ct. at 1972. Relying upon its prior decisions, the Court explained:
"Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause." Patterson v. New York, [432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977)]. In Mullaney v. Wilbur[, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975),] we explicitly held unconstitutional a mandatory rebuttable presumption that shifted to the defendant a burden of persuasion on the question of intent. And in Sandstrom we similarly held that instructions that might reasonably have been understood by the jury as creating a mandatory rebuttable presumption were unconstitutional.
Franklin, 471 U.S. at 317, 105 S.Ct. at 1972 (citation omitted).
Thus, to decide whether the instruction in this case violated due process, one must determine the effect of the evidentiary device. This task is made easier once the devices are properly labeled and their import clearly understood. In Sandstrom, Franklin, and Allen, the United States Supreme Court attempted to clarify this area. Cases that predated those three decisions *1161 often used the terms "inference" and "presumption" loosely and interchangeably, thereby complicating the inquiry.
For example, in State v. Ferrari, 398 So.2d 804, 806 (Fla. 1981), the Court concluded that section 713.34(3), Florida Statutes (1979), created a "permissive presumption" that passed constitutional muster. The statute provided that failure to pay for labor, services, or materials, after receipt of payments advanced for that purpose, constituted prima facie evidence of intent to defraud.
However, four years later in Miller, 775 F.2d at 1572, the Eleventh Circuit applied Franklin, which had been decided subsequent to Ferrari, to the same statute and reached the opposite result. Because the instruction based upon that statute could have been interpreted as creating the kind of rebuttable presumption found in Franklin, the court in Miller held the instruction unconstitutional. The appropriate test under Sandstrom and Franklin, the court noted, was "`not what the State Supreme Court declares the meaning of the charge to be, but rather what a reasonable juror could have understood the charge as meaning.'" Miller, 775 F.2d at 1575 (quoting Franklin, 471 U.S. at 315-16, 105 S.Ct. at 1971-72). The court continued:
[T]he fact that a presumption does not bind a jury to find that "the presumed fact necessarily follows the proven fact" does not mean that the presumption is a permissive inference. Such a presumption could be either a permissive inference or a mandatory rebuttable presumption. The difference between the two ... is that, unlike a permissive inference, a mandatory rebuttable presumption requires a jury to find that the presumed fact follows the proven fact unless the defendant produces evidence to rebut the existence of the presumed fact.
Id. (emphasis in original).
Thus, the circuit court concluded that because the instruction could have been interpreted by a reasonable juror as a rebuttable presumption, the instruction was unconstitutional.[9] I am persuaded that this is the correct analysis. The instruction in Ferrari, although called a "permissive presumption," was really an impermissible rebuttable presumption.[10]
In order to assess the constitutionality of an instruction, one must determine whether a reasonable juror would perceive the court's instruction as either relieving the state of its obligation to directly prove every element of the crime charged, or of shifting to the defendant the burden of proof. In such a case, the instruction constitutes a conclusive or rebuttable presumption that violates a defendant's due process rights. If the instruction merely permitted, but did not require, the jury to infer a fact, placing no burden on the defendant, *1162 then it created an inference. The constitutional test in the case of an inference is whether there is a rational, logical and direct linkage between the basic fact and the inferred fact, i.e., whether in the context of common universal experience one flows logically and reasonably from the other.[11]
In the case below, the trial judge instructed the jury that if the evidence showed Rolle had a blood-alcohol level of 0.10 or more, such evidence "would be sufficient by itself to establish" that he was legally impaired and that "[s]uch evidence may be contradicted or rebutted by other evidence" (emphasis supplied). I believe this to be an unconstitutional rebuttable presumption and not an inference.
A reasonable juror in the case below could have interpreted the instruction as establishing a presumption with respect to the critical element of legal impairment. Upon the introduction of two breath tests recording blood alcohol levels of 0.18 and 0.20, a reasonable juror could have felt compelled to conclude that those tests were adequate and competent by themselves to prove that Rolle was legally impaired. Or a reasonable juror could have felt compelled to conclude that the breath tests were adequate to prove legal impairment unless Rolle persuaded the jury that the presumption was unwarranted, thus improperly shifting the burden of proof.
There is nothing in the totality of the instructions that negates the possibility of this interpretation by the jury. I fail to see how the majority concludes, without any analysis, that the instruction is distinguishable from the very presumptions that the Court in Franklin and Sandstrom held unconstitutional, or indeed, why any distinction should be made.
Accordingly, I believe that the instruction on the alternative impairment theory of driving under the influence violated Rolle's due process rights.
KOGAN, J., concurs.
NOTES
[1] Section 316.028 was renumbered in 1977 as section 316.193.
[2] Prior to 1982, section 316.1934 was numbered as section 322.262.
[3] Additionally, we note that although neither the parties in this case nor the district court below discussed DUBAL, the verdict form included both alternative theories and there is no indication that the jury convicted Rolle based on impairment (DUI) rather than on blood-alcohol level (DUBAL), nor is there any argument that the state failed to prove that Rolle had a blood-alcohol level of greater than 0.10 percent.
[4] It should be noted that while this statutory inference served an important function when DUBAL was a separate offense, it serves little or no purpose in this context now that DUI and DUBAL have been consolidated. However, the legislature did not amend this section when it consolidated DUI and DUBAL in 1982. See ch. 82-155, Laws of Fla. It should also be noted, however, that while the inference in section 316.1934(2)(c) is essentially irrelevant in a case involving only a violation of section 316.193 (DUI and DUBAL), until 1986 it still served an important function with respect to prosecutions under section 316.1931, Florida Statutes (DWI), because proof of impairment was required.
[1] The majority's reliance upon Roberts v. State, 329 So.2d 296 (Fla. 1976), is misplaced. Roberts upheld the DUBAL statute against a challenge that the statute was vague and indefinite. However, Roberts did not consider whether the statute impermissibly shifted the burden of persuasion to the defendant.
[2] Evidentiary devices advance a variety of policy interests. For example, presumptions exist to enhance trial fairness, as when an imbalance results from one party's superior access to proof; or to avoid an impasse, as when there is no probability to believe that one fact was more likely to have occurred than another; or for procedural convenience, as when the same name appears on a chain of title first as grantee and then as grantor, in which event those names are presumed to refer to the same person. McCormick On Evidence § 343, at 968-73 (E. Cleary 3d ed. 1984). Evidentiary devices may also advance a legislative policy of restricting judicial comment upon certain evidence. See generally Allen, Structuring Jury Decisionmaking In Criminal Cases: A Unified Constitutional Approach To Evidentiary Devices, 94 Harv.L.Rev. 321, 348-54 (1980).
[3] The inference has been variously referred to as a "permissive inference," Francis v. Franklin, 471 U.S. 307, 314, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985); County Court v. Allen, 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979), and "permissive presumption," id. at 167, 99 S.Ct. at 2230; State v. Ferrari, 398 So.2d 804, 806 (Fla. 1981). This confusion of terms invites clarification. The term "permissive" in this context is redundant. I see no difference between a "permissive inference" and an "inference" because an inference by definition is permissive. In either one, the jury may accept or reject the fact inferred. See Cleary, Presuming and Pleading: An Essay on Juristic Immaturity, 12 Stan.L.Rev. 5, 16-17 (1959). Referring to an inference as a "permissive presumption" only serves to compound the confusion. Presumptions and inferences are discrete evidentiary devices.
[4] The constitutional validity of an inference is determined as applied to the facts of the case. Allen, 442 U.S. at 157, 163, 99 S.Ct. at 2224, 2227.
[5] The Florida Evidence Code defines a presumption as "an assumption of fact which the law makes from the existence of another fact or group of facts found or otherwise established." § 90.301(1), Fla. Stat. (1987). Admittedly, this section is intended to apply only to civil actions or proceedings, and presumptions in civil cases may differ significantly from presumptions in criminal cases. C. Ehrhardt Florida Evidence, § 301.2, at 64 (2d ed. 1984). However, this definition aptly describes presumptions in criminal contexts as well.
[6] The law permits rebuttable presumptions when the presumed fact proves beyond a reasonable doubt the existence of the basic fact, provided that the defendant not bear the burden of persuasion. Franklin, 471 U.S. at 314, 105 S.Ct. at 1971. The Court in Franklin reserved judgment on whether a presumption may permissibly shift the burden of presumption may permissibly shift the burden of production to the defendant. Id. at 314 n. 3, 105 S.Ct. at 1971 n. 3.
[7] This device is also described as an "irrebuttable presumption," Franklin, 471 U.S. at 317, 105 S.Ct. at 1972; an "absolute" or "imperative" presumption, P. Brosman, The Statutory Presumption, 5 Tul.L.Rev. 15, 16 (1930); or a "true presumption." D. Louisell & C. Mueller, Federal Evidence § 67, at 534 (1977). By whatever terminology this device is described, it operates as "a rule of law which no amount of proof will dislodge." Id. Once the state produces evidence sufficient to establish the basic fact, the defendant is then precluded from offering evidence to negate that fact. State ex rel. Boyd v. Green, 355 So.2d 789, 793 (Fla. 1978). Viewed in this light, it is understandable why commentators regard conclusive presumptions not as presumptions at all, but as redefinitions of the crime or as rules of substantive law. 1 W. LaFave & A. Scott, Substantive Criminal Law § 2.13, at 225 (1986); The Statutory Presumption, supra, at 24.
[8] A shift in the burden of proof alternatively has been referred to as a shift in the burden of persuasion. The two terms are synonymous. See D. Louisell & C. Mueller, supra n. 7, § 66, at 527.
[9] The court in Miller v. Norvell, 775 F.2d 1572 (11th Cir.1985), cert. denied, 476 U.S. 1126, 106 S.Ct. 1995, 90 L.Ed.2d 675 (1986), opined that even if the instructions had created an inference, they were unconstitutional. This is so because the only evidence of the defendant's intent to defraud was that the defendant did not spend the payments advanced for various projects on those projects. Where an inference is the sole evidence of guilt, the inference must not only satisfy the "more likely than not test" but also must satisfy the reasonable-doubt test. Id. at 1575; Allen, 442 U.S. at 167, 99 S.Ct. at 2230.
[10] Other Florida cases, in my view, have mislabeled inferences as rebuttable presumptions. For instance, in a prosecution for escape, State v. Williams, 444 So.2d 13, 15 (Fla. 1984), the Court determined that a "presumption" of lawful custody exists once the state proves that the defendant was confined in one of the statutorily enumerated facilities. Proof of the basic fact, confinement in a state facility, is no substitute for the presumed fact, that the confinement was lawful, such that proof of the former will support a finding of the latter beyond a reasonable doubt. However, it can be fairly inferred that proof of confinement in such a facility rationally supports the conclusion that the defendant was lawfully confined there. Similarly, in a prosecution for failure to pay for food or lodging upon demand of an undisputed amount, Hamilton v. State, 329 So.2d 283 (Fla.), appeal dismissed, 429 U.S. 909, 97 S.Ct. 299, 50 L.Ed.2d 276 (1976), this Court determined that proof of same raises a "presumption" of intent to defraud. It can be fairly inferred that proof of the former rationally supports a conclusion of the existence of the latter. However, under Sandstrom and Franklin, the "presumption" goes too far and impermissibly shifts to the defendant the burden of persuasion.
[11] In deciding whether the strength of the relationship between the two facts in an inference survives due process scrutiny, courts may look to "accumulated common experience," Barnes v. United States, 412 U.S. 837, 844, 93 S.Ct. 2357, 2362, 37 L.Ed.2d 380 (1973); "common sense and experience," id. at 845, 93 S.Ct. at 2363; and the relation of the presumption "in experience to general facts." McFarland v. American Sugar Refining Co., 241 U.S. 79, 86, 36 S.Ct. 498, 501, 60 L.Ed. 899 (1916).