568 So.2d 1 (1990)
Michael J. WILHELM, Petitioner,
v.
STATE of Florida, Respondent.
No. 74345.
Supreme Court of Florida.
September 6, 1990.
Rehearing Denied November 9, 1990.
James Marion Moorman, Public Defender, and Paul C. Helm, Asst. Public Defender, Bartow, for petitioner.
Robert A. Butterworth, Atty. Gen., and Joseph R. Bryant, Asst. Atty. Gen., Tampa, for respondent.
EHRLICH, Justice.
We have for review Wilhelm v. State, 544 So.2d 1144, 1146 (Fla.2d DCA 1989), which certified the following as a question of great public importance:
DOES THE JURY INSTRUCTION BASED ON THE STATUTORY PRESUMPTION CONTAINED IN SECTION 316.1934(2)(c), FLORIDA STATUTES (1986), CREATE AN UNCONSTITUTIONAL MANDATORY REBUTTABLE PRESUMPTION?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the affirmative, and quash the decision of the district court below.
Wilhelm's semi-tractor collided with a station wagon and a taxi. A passenger in the station wagon, a young child, died as a result of injuries suffered in the accident. Wilhelm was charged with vehicular homicide, *2 driving while intoxicated (DWI) manslaughter, and manslaughter.
At trial, the state introduced evidence that a chemical test of Wilhelm's blood revealed a blood-alcohol content of .20 percent. Two police officers and a witness to the accident testified that Wilhelm smelled of alcohol and appeared bewildered at the scene of the accident. In addition, the officers testified that Wilhelm did not perform well in the alcohol impairment tests administered at the scene.[1]
Wilhelm, testifying on his own behalf, denied intoxication. He stated that he had one beer about three hours before the accident and also had taken Nyquil cold medicine.[2] A chemist testified that Wilhelm would have had to have ingested sixteen ounces of Nyquil to produce a blood-alcohol content of .20 percent.
Wilhelm was acquitted of the vehicular homicide and manslaughter charges, but was convicted of DWI manslaughter under section 316.1931, Florida Statutes (1985).[3] He was sentenced to seven years' incarceration and fined in excess of $10,000. Wilhelm appealed to the Second District Court of Appeal, arguing that the jury instruction given on the evidence of blood-alcohol content violated his due process rights by applying a mandatory presumption to the element of intoxication. The Second District Court agreed, but held that the error was harmless and affirmed Wilhelm's conviction.
The jury was given the following instruction concerning the evidence of Wilhelm's blood-alcohol level:
[I]f you find from the evidence ... that the defendant had point one zero percent or more by weight of alcohol in his blood, it is [a] prima facie case that the defendant was under the influence of alcoholic beverages to the extent his normal faculties were impaired.
(Emphasis added.) Wilhelm argues that this instruction effectively shifts the burden of proof to him on the element of intoxication, in violation of his due process rights, by requiring the jury to find intoxication if they found that Wilhelm had the requisite blood-alcohol level.
Intoxication, that is being under the influence of alcoholic beverages to the extent the normal faculties are impaired, is certainly an essential element of the offense of DWI manslaughter as set forth in section 316.1931. Therefore, due process requires that the state bear the burden of proof beyond a reasonable doubt, alternatively called the burden of persuasion, that Wilhelm was intoxicated. See In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
The language of this instruction is taken almost verbatim from section 316.1934(2)(c), Florida Statutes (1985), which states:
(c) If there was at that time 0.10 percent or more by weight of alcohol in the person's blood, that fact shall be prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired... .
(Emphasis added.) In State v. Rolle, 560 So.2d 1154 (Fla. 1990), we recently held that *3 section 316.1934(2)(c) creates a permissive inference, not an unconstitutional presumption. However, the fact that this Court has interpreted the words "prima facie" when used in a statute as a valid inference does not mean that a jury instruction utilizing those words is also necessarily valid. Although this Court is the final interpreter of state statutory language, see Sandstrom v. Montana, 442 U.S. 510, 516-17, 99 S.Ct. 2450, 2455, 61 L.Ed.2d 39 (1979) ("The Supreme Court of Montana is, of course, the final authority on the legal weight to be given a presumption under Montana law, but it is not the final authority on the interpretation which a jury could have given the instruction."), the standard to determine the constitutionality of a jury instruction, as recently framed by the United States Supreme Court, is whether "there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that shifts to the defendant the burden of persuasion on an element of the offense charged. Boyde v. California, ___ U.S. ___, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990).
"Prima facie" is a technical legal term without a common meaning for the lay person. Confronted with such a term in the jury instructions, and provided with no definition, a reasonable juror would be forced to guess at its meaning from the context in which it is used. In this case, that context is an explanation in the jury instructions of what the jury can and cannot "presume." Further, there was no language in the instruction immediately following that challenged which instructed the jury that evidence of blood-alcohol content as it related to intoxication could be rebutted by the defendant. Although such language would not have cured the instruction, Francis v. Franklin, 471 U.S. 307, 318, 105 S.Ct. 1965, 1973, 85 L.Ed.2d 344 (1985), its absence makes it possible that the jury understood the instruction not only as a mandatory presumption, but one which is irrebuttable.
By contrast, the jury instruction approved in Rolle stated that evidence of .10 percent blood-alcohol content or higher "would be sufficient by itself to establish that the Defendant" was impaired. 560 So.2d at 1155. This contained no undefined legal terms requiring the jury to guess as to their meaning, and we found "that a reasonable juror would have understood the challenged instruction as allowing proof of a blood-alcohol level of 0.10 percent or higher to be evidence of impairment, not as requiring a finding of impairment in that circumstance." Id. 560 So.2d at 1156. We find that there is a reasonable likelihood that the jury in this case applied the instruction in this case to require a finding of intoxication upon proof of a blood-alcohol level of .10 percent or higher, and the instruction thereby unconstitutionally relieves the state of the burden of proof on an element of the offense of DWI manslaughter.
However, we disagree with the district court that this error was harmless. The district court found "beyond a reasonable doubt that there was overwhelming evidence before the jury that at the time of the accident, the appellant was under the influence of alcohol to the extent that his normal faculties were impaired." 544 So.2d at 1146. This is not a proper application of the harmless error test. As this Court stated in State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986):
The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
(Emphasis added.) In this case, Wilhelm's blood-alcohol level was by far the single most damaging piece of evidence against *4 him. The state presented other evidence of Wilhelm's behavior at the accident scene to show intoxication, but this evidence can hardly be termed "overwhelming." Further, Wilhelm, testifying on his own behalf, presented the jury with not implausible explanations for his behavior at the accident scene. The instruction given allowed the jury to avoid or circumvent the difficult decision of whether the evidence as a whole proved beyond a reasonable doubt that Wilhelm was intoxicated, because the jury could have understood it to mandate a finding of intoxication from proof of Wilhelm's blood-alcohol content alone. In these circumstances, we cannot say that the error was harmless.[4]
For the reasons set forth above, we answer the certified question in the affirmative, and quash the decision of the district court below with directions to vacate Wilhelm's conviction and sentence and remand for a new trial.
It is so ordered.
SHAW, C.J., and McDONALD, BARKETT and KOGAN, JJ., concur.
GRIMES, J., dissents with an opinion, in which OVERTON, J., concurs.
GRIMES, Justice, dissenting.
While it may be that the average juror would not fully appreciate the meaning of prima facie, I do not believe the instruction at issue in this case caused the jury to be misled in finding Wilhelm guilty. A jury instruction which creates an impermissible mandatory rebuttable presumption may be harmless where there is no reasonable possibility that the error affected the verdict. Davis v. Kemp, 752 F.2d 1515 (11th Cir.), cert. denied, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706, 707 (1985).
As noted in the majority opinion, Wilhelm not only had a blood-alcohol reading of .20 percent, which is twice as high as the statutory definition of impairment, but also he abysmally failed his roadside sobriety tests. His excuse for the high blood-alcohol content was that he had been taking Nyquil cold medicine, yet a chemist testified that he would have had to drink a quart of Nyquil to produce a blood-alcohol content of .20 percent. When asked to recite the alphabet, he sang the alphabet song, which consists of a musical rendition of the entire alphabet, concluding with the words "now I know my ABC's, tell me what you think of me." The jury had every reason to conclude that Wilhelm was drunk, and it would have found him guilty regardless of the defective instruction.
OVERTON, J., concurs.
NOTES
[1] Officer Howard Cole testified that Wilhelm could not stand on one leg for 30 seconds or walk heel to toe in a straight line, and that when asked to recite the alphabet, Wilhelm sang the alphabet song.
[2] Wilhelm also testified that his foot had been injured in the accident and he therefore could not stand for a long time on one leg, that he could not walk a straight line because the gravel road was slippery and muddy, and that he sang the alphabet song because he regularly sang it to his daughter.
[3] Section 316.1931, Florida Statutes (1985), provides in pertinent part:

(1) It is unlawful for any person, while in an intoxicated condition or under the influence of alcoholic beverages ... to such extent as to deprive him of full possession of his normal faculties, to drive, be in actual physical control of, or operate within this state any automobile, truck, motorcycle, or other vehicle... .
(2)... .
(c) If the death of any human being is caused by the operation of a motor vehicle by any person while so intoxicated, such person shall be deemed guilty of manslaughter and on conviction shall be punished as provided by existing law relating to manslaughter.
[4] In this context we note an important distinction between this case and State v. Rolle, 560 So.2d 1154 (Fla. 1990), in that the defendant in Rolle, was charged pursuant to section 316.193, Florida Statutes (1985), with both driving under the influence (DUI) and driving with an unlawful blood-alcohol level (DUBAL). Under DUBAL, proof of .10 percent or higher blood-alcohol level is itself an element of the offense which may be proved instead of impairment. Wilhelm, however, was charged with DWI manslaughter under section 316.1931, Florida Statutes (1985), which had no provision comparable to DUBAL. Therefore, proof of a blood-alcohol level of .10 percent or higher is not sufficient; the state must prove that the defendant was impaired, i.e., that he was not in full possession of his normal faculties.