805 So.2d 862 (2001)
Stephen TYNER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D99-2854.
District Court of Appeal of Florida, Second District.
September 12, 2001.
Rehearing Denied October 23, 2001.
*863 Tony C. Dodds, Lakeland, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
CAMPBELL, MONTEREY, (Senior) Judge.
Stephen Tyner challenges his judgment and sentence for driving under the influence of alcohol/manslaughter (DUI manslaughter) and DUI causing property damage in violation of section 316.193, Florida Statutes (1995). Under the particular circumstances of this case, we affirm. But see Dodge v. State, 26 Fla. L. Weekly D1550 (Fla. 4th DCA June 20, 2001).
The primary issue presented to us by Mr. Tyner is whether he was convicted of the DUI offense based upon the proof admitted at trial relative to his blood alcohol level and the improper application of the presumption of impairment created by section 316.1934, Florida Statutes (1995). The State concedes that it was not entitled to the use of the presumption of impairment created by section 316.1934 because Mr. Tyner's blood alcohol test and results were not obtained in accordance with the core policies of the implied consent law, sections 316.1932, 316.1933 and 316.1934, Florida Statutes (1995). See State v. Miles, 775 So.2d 950 (Fla.2000) (Miles II); Townsend v. State, 774 So.2d 693 (Fla. 2000); Robertson v. State, 604 So.2d 783 *864 (Fla.1992); State v. Bender, 382 So.2d 697 (Fla.1980). However, the State argues, and we agree, that Mr. Tyner was properly convicted because the evidence of his blood alcohol test results were admitted after the establishment of the three-prong predicate set forth in Robertson. The jury was not instructed regarding the presumption of impairment created by section 316.1934, nor did the State argue the presumption to the jury.
Prior to trial, Mr. Tyner filed a motion to suppress, or in the alternative, a motion in limine to exclude his blood alcohol test results due to the inadequacy of FDLE rules regarding the collection and storage of blood samples. The trial judge denied the motion. At trial, however, the State realized that the use of the presumption created by the implied consent law might jeopardize on appeal any conviction based on the presumption because Townsend and Miles II were then pending before our supreme court. Based on their trepidations, the State chose to introduce the blood evidence in accord with the three-prong predicate and analysis of Robertson. The record before us reveals the following colloquy between the trial judge and the assistant state attorney:
THE COURT: It sounds to me, like, at this point, though, the state has now reached the point where it would rely on Robertson and Bender, and attempt to introduce the evidence through the scientific methods as before implied consent.
MR. KIRKLAND: That is correct, Your Honor.... And we are doing this to hedgeI'm being very frank with the courtthat in the event the appellate court holds that the blood rules are inadequate, and that the state was not entitled to the presumption, and that the scientific predicate should have been laid, we're going to go ahead and lay in on this case.
Although the trial judge indicated that the State would be permitted to utilize the implied consent law presumption, in a wise abundance of caution, the State chose not to do so.
The record reveals that the evidence of Mr. Tyner's blood alcohol level was properly admitted according to the three-prong predicate and analysis of Robertson. At the close of evidence, the trial judge instructed the jury regarding the DUI offense as follows:
Before you can find the defendant, Stephen C. Tyner, guilty of DUI manslaughter as charged in Count One, the State must prove the following three elements beyond a reasonable doubt: One, the defendant operated a vehicle; two, the defendant by reason of such operation caused or contributed to the cause of death of Malina Bos; at the time of such operation, the defendant was under the influence of alcoholic beverages to the extent that his normal faculties were impaired or had a blood alcohol level of .08 percent or higher.
While it is no longer subject to debate that the State is prohibited from utilizing the presumption of the implied consent law in a DUI prosecution when only the common law, three-prong predicate of Robertson is utilized to admit blood alcohol test results, the Fourth District in Dodge has extended that prohibition to encompass the DUI charge as given in the instant case. The court in Dodge considered a nearly identical DUI jury charge as that given to Mr. Tyner's jury. In holding that the State did, in fact, have the improper benefit of the statutory benefit of impairment, the Dodge court stated that "even though the trial court did not specifically state that a blood/alcohol level of .08 gives rise to a presumption of impairment, the instruction *865 clearly gives the impression that if appellant's blood/alcohol level was .08 or higher, his normal faculties were impaired." Dodge, 26 Fla. L. Weekly at D1552.
Because we believe the Dodge court overlooked the alternative theories for DUI offenses as proscribed by section 316.193, we disagree with the conclusions reached by our respected colleagues in Dodge.
As noted by our supreme court in Robertson:
Florida law authorizes two alternative theories for DUI offenses: actual impairment, or a blood alcohol level of 0.10 or higher. § 316.193, Fla. Stat. (1987). The second of these is a strict-liability theory, since the fact of operating a motor vehicle with a blood-alcohol level of 0.10 or higher is an offense even if impairment cannot be proven. There is some redundancy in the statute, however, since impairment is presumed if the blood-alcohol content is 0.10 or higher. § 316.1934(2), Fla. Stat. (1987). In any event, the presumption of impairment created by this last statute is a moot concern if the state proves beyond a reasonable doubt that the defendant operated a motor vehicle with an unlawful blood-alcohol level. Here, the state met this burden.
604 So.2d at 792 n. 14.
The DUI statute, section 316.193(1), Florida Statutes (1995), provides as follows:
316.193 Driving under the influence; penalties.
(1) A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if such person is driving or in actual physical control of a vehicle within this state and:
(a) The person is under the influence of alcoholic beverages, any chemical substance set forth in s.877.111, or any substance controlled under chapter 893, when affected to the extent that the person's normal faculties are impaired; or
(b) The person has a blood or breath alcohol level of 0.08 percent or higher.
Robertson recognizes three ways to prove the two alternative theories for DUI offenses set forth in section 316.193(1). One way to prove the first alternative theory of DUI, i.e., driving while under the influence of alcohol or chemical substances when the driver's normal faculties are impaired (impairment), is by proof of the circumstances of actual impairment without resort to evidence of blood alcohol levels. That proof could consist of such things as the driver's odor of alcohol; witnesses who observed the driver consuming alcohol; evidence of the physical impairment of the driver; or evidence of an erratic manner of driving and other related and relevant evidence. That type of proof was presented concerning Mr. Tyner at his trial.
The second method of proof of the first alternative theory of DUI (impairment) would be the use of the implied consent law and the resulting blood alcohol test and analysis reflecting a blood alcohol level of 0.08 or higher to create the statutory presumption that the driver was impaired, i.e., under the influence of alcohol to the extent his normal faculties were impaired. These methods of proof were not used as evidence against Mr. Tyner.
The second alternative theory, and the third way to prove DUI under section 316.193, is described in Robertson as the "strict liability theory." This theory is not related to either of the two ways to prove an "impairment" DUI case. It is this *866 strict liability theory that we conclude the Dodge court overlooked. The strict liability theory is the offense previously and more commonly referred to as driving with an unlawful blood alcohol level (DUBAL).
The history of these several theories of DUI offenses and the varying manner in which they might be proved is clearly set forth in State v. Rolle, 560 So.2d 1154 (Fla.1990). Because the majority opinion of then Chief Justice Ehrlich is so well-reasoned and so directly on point as to the issue before us, we quote that opinion as follows:
In determining whether the challenged statute and jury instruction constitute a permissive inference or an unconstitutional presumption, a review of the relevant history of chapter 316 is both instructive and enlightening. Prior to 1974, driving under the influence (DUI) could be proven in only one way, by proof of impairment. § 316.028(1), Fla. Stat. (1973).[FN1] In 1974, the legislature created the offense of driving with an unlawful blood-alcohol level (DUBAL). Ch. 74-384, § 1, Laws of Fla. (codified at § 316.028(3), Fla. Stat. (Supp.1974)). At that time, DUBAL was clearly a separate offense from DUI. It was located in a separate paragraph of the statute from DUI, and contained separate, and lesser penalties for conviction. Compare § 316.028(1), (2), Fla. Stat. (Supp.1974) with § 316.028(3)-(4), Fla. Stat. (Supp.1974). Under this statutory scheme, if the state could not prove impairment the defendant could still be convicted of DUBAL. This Court upheld DUBAL against constitutional attack in Roberts v. State, 329 So.2d 296 (Fla.1976).
However, in 1982 the statutory landscape changed dramatically. The legislature substantially reworded the statute, consolidating DUI and DUBAL and providing identical penalties for conviction. Ch. 82-155, § 2, Laws of Fla. (codified at § 316.193(1)(a)-(b), Fla. Stat. (Supp.1982)). It is this statutory framework which concerns us today.
* * * *
It is clear that this statute now creates one offense, driving under the influence, which may be proven in either of two ways: (a) by proof of impairment, or (b) by proof of a blood-alcohol level of 0.10 percent or higher. Because proof of either (a) or (b) is sufficient, if the state proves beyond a reasonable doubt that the defendant was "driving or in actual physical control of a vehicle within this state," and had a blood-alcohol level of 0.10 percent or higher, then the state need not prove impairment. However, if the state cannot prove that the defendant had a blood-alcohol level of 0.10 percent or higher, it may still obtain a conviction if it can prove impairment beyond a reasonable doubt.
560 So.2d 1154-55 (footnotes omitted). The Rolle majority also relevantly observed:
Additionally, we note that although neither the parties in this case nor the district court below discussed DUBAL, the verdict form included both alternative theories and there is no indication that the jury convicted Rolle based on impairment (DUI) rather than on blood-alcohol level (DUBAL), nor is there any argument that the state failed to prove that Rolle had a blood-alcohol level of greater than 0.10 percent.
560 So.2d at 1157 n. 3. Therefore, we conclude that Mr. Tyner was properly convicted of DUI/manslaughter and DUI/property damage under either or both alternative theories of (1) actual impairment (without use of the statutory presumption) and/or (2) strict liability for unlawful blood alcohol *867 (DUBAL). We observe that the legislature continues to specifically recognize the offense of driving with an unlawful blood alcohol level as an alternative to an impairment DUI offense. Section 316.1934(2)(c), Florida Statutes (2000), provides:
If there was at that time a blood-alcohol level or breath-alcohol level of 0.08 or higher, that fact is prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his or her normal faculties were impaired. Moreover, such person who has a blood-alcohol level or breath-alcohol level of 0.08 or higher is guilty of driving, or being in actual physical control of, a motor vehicle, with an unlawful blood-alcohol level or breath-alcohol level.

(emphasis added).
Finally, we would be remiss if we did not acknowledge that our reasoning and conclusions reached were aided and presaged by Judge Blue's concurring opinion in State v. Townsend, 746 So.2d 495 (Fla. 2d DCA 1999), aff'd in part, rev'd in part, 774 So.2d 693 (Fla.2000), wherein he stated:
Second, assuming the State can have the blood test results admitted into evidence through expert testimony, which is the way this type of evidence was admitted for years, the jury will be instructed that a blood-alcohol level which exceeds 0.08 is an element of DUI. See § 316.193, Fla. Stat. (1995). See also Robertson, 604 So.2d at 792 n. 14. This instruction is available to the State regardless of the presumption instruction.
Id. at 497. See also Richardson v. State, 797 So.2d 10 (Fla. 5th DCA 2001).
Mr. Tyner raises as an additional error in the trial below the trial judge's instructions to the jury that the deceased victim's failure to wear a seat belt was not a defense to DUI/manslaughter. We find no error in the giving of the complained-of instruction. Union v. State, 642 So.2d 91 (Fla. 1st DCA 1994); Frazier v. State, 530 So.2d 986 (Fla. 1st DCA 1988), aff'd in part, rev'd in part, 559 So.2d 1121 (Fla. 1990).
Affirmed.
PARKER, A.C.J., and SILBERMAN, J., Concur.